UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STANLEY COLLINS,

      Petitioner,

                     Case No. 8:14-CV-2218-T-24TBM

UNITED STATES OF AMERICA,

      Respondent.

_____/

## O R D E R

This cause comes on for consideration of Petitioner's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Judgment and Sentence by a Person in Federal Custody (Cv-D-1), the Government's response (Cv-D-12), Petitioner's Post-Hearing Supplemental Argument (Cv-D-33), the Government's Post-Hearing Brief (Cv-D-32), and Petitioner's Motion for Leave to Amend Petitioner's Motion to Vacate Conviction per 28 U.S.C. § 2255 Pursuant to Fed. R. Civ. P. Rule 15 Supplemental Amendment (Cv-D-34).

On January 6, 2012, Petitioner was charged in a criminal complaint with knowingly and willfully attempting to possess with the intent to distribute five (5) kilograms or more of cocaine. According to the affidavit in support of the Complaint by Special Agent Dan Gordon of the Drug Enforcement Administration, after Petitioner was arrested and advised of his Miranda warnings, Petitioner made voluntary statements with regard to approximately $150,000 that was seized from his vehicle. (Cr-D-1, p. 4.)

According to Special Agent Gordon, Petitioner stated that the money was for a purpose other than purchasing cocaine.  (Id.)

The Court appointed the Office of the Federal Public Defender to represent Petitioner.  Petitioner was provided with a copy of the Complaint at his initial appearance.  (Cr-D-4.)  Petitioner later retained attorney Mark Rankin who filed his notice of appearance on behalf of Petitioner on January 17, 2012.  On February 8, 2012, Rankin filed a motion for pretrial release. Rankin noted in the motion that Petitioner may face potential life in prison based on his prior felony convictions.  (Cr-D-11, p. 2.) The Government noted in its response that, if convicted at trial, Petitioner's advisory sentencing guideline range, without a section 851 enhancement, would be 360 months to life imprisonment.  The Government explained that if an 851 enhancement were filed for two or more drug convictions, Petitioner faced a mandatory sentence of life imprisonment.  (Cr-D-12, p. 4.)

On February 23, 2012, Petitioner was charged by way of an Indictment with conspiracy to possess with the intent to distribute or to distribute five kilograms or more of cocaine and attempting to possess with the intent to distribute or to distribute five kilograms of more of cocaine in violation of in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii).  On March 15, 2012, Petitioner appeared at a hearing regarding his motion for bond.  At that time, AUSA Muldrow explained the evidence to U.S. Magistrate Judge Mark A. Pizzo.  AUSA Muldrow reviewed Petitioner's prior criminal

2

history and opined that Petitioner was a career offender.  Muldrow
also stated that he had not yet filed an 851 enhancement, but if he
did, Petitioner would face mandatory life.  Judge Pizzo denied the
motion for bond.

On April 12, 2012, the Government filed its Information and
Notice of Prior Convictions (Cr-D-28) advising that Petitioner
faced an enhanced penalty of mandatory life imprisonment.
Petitioner proceeded to trial on April 23, 2012.  On the afternoon
of jury selection, during a discussion with the Court regarding
some evidentiary matters, AUSA Muldrow noted that Petitioner made
a post-Miranda statement to law enforcement that he was going to be
buying a foreclosed property with the $150,000 in cash found in his
vehicle.  (Cr-D-104, p. 85.)

On the fourth day of trial, Detective Levi Cobbaras with the
St. Petersburg Police Department testified that he witnessed
Petitioner being read his Miranda rights.  (Cr-D-107, p. 12-13.)
According to Cobbaras, Petitioner understood his rights and a
formal interview took place later.  (Id. at p. 13.)  Special Agent
Gordan testified that Petitioner was willing to answer questions
and told him the $150,000 was his and that he got it from working
and gambling.  Petitioner further advised that he planned to buy a
foreclosure.  (Id. at p. 35.)  Gordon, however, testified that
Collins could not provide a description of the house, the name of
the street, the name of the bank, or whether he was dealing with a
real estate agent.  (Id.)

3

On April 27, 2012, a jury found Petitioner guilty of both Counts of the Indictment.   On September 5, 2012, the Court sentenced Petitioner to a mandatory term of life imprisonment.

Attorney Rankin sought to withdraw as counsel for Petitioner citing irreconcilable differences.   Petitioner's family retained attorney Mark O'Brien to represent Petitioner on appeal.   The Eleventh Circuit affirmed Petitioner's convictions.   United States v. Collins, 521 Fed. Appx. 855 (11th Cir. June 7, 2013).

Petitioner, who is represented by counsel, timely filed his § 2255 motion.   Petitioner claims ineffective assistance of counsel in that attorney Rankin failed to: (1) move for a mistrial or to strike the jury venire when the venire saw Petitioner in shackles; (2) file a pretrial motion in limine; (3) file a motion to suppress statements that were obtained in violation of Petitioner's right to counsel and right to remain silent; (4) review the sentencing guidelines with Petitioner and advise him, prior to the Government's filing of its information pursuant to 21 U.S.C. § 851, of the risk and likelihood of a sentence enhancement;   and (5) object to the Court's use of prior convictions to enhance his sentence and raise the issue on appeal.   Petitioner also raises a substantive claim that his prior convictions were required to be charged in the Indictment and proved beyond a reasonable doubt.

By order dated June 1, 2015, the Court found that Petitioner was entitled to an evidentiary hearing on grounds one, three and four.   The Court held the evidentiary hearing on July 8, 2015.

Petitioner testified on his own behalf.  Attorney Rankin testified on behalf of the Government.  At the conclusion of the hearing, the parties requested and were granted permission to file post-hearing briefs.  The briefs were filed December 2, 2015.  On December 7, 2015, Petitioner, despite being represented by counsel, filed a pro se motion seeking to amend his § 2255 motion to include a claim that he was erroneously sentenced as a career offender.  (Cv-D-34.)

### Testimony at the Hearing

Petitioner Stanley Collins explained that he was arrested on January 6, 2012 by DEA Special Agent Dan Gordon.  (Cv-D-26, p. 8-9.)  He recalled being read his Miranda rights, and he acknowledged that he understood them.  Petitioner testified that he told Special Agent Gordon he did not want to speak and repeatedly asked for an attorney.  (Id. at p. 9.)  According to Petitioner, Agent Gordon kept badgering him and when Agent Gordon  asked Petitioner where he got the money from, Petitioner told him it was Petitioner's money. (Id. at p. 10.)

Initially, Petitioner testified that attorney Rankin never discussed with Petitioner his statements to Agent Gordon or Petitioner's right to challenge the admissibility of his statements.  (Id. at p. 10.)  On cross, Petitioner admitted he spoke with Rankin about both his statements and Agent Gordon's expected testimony at trial.  (Id. at p. 27-28.)  He testified that he told Rankin that he requested an attorney and that Gordon continued to badger him.  (Id. at p. 29.)  Petitioner further

testified that he asked Rankin if he was going to move to suppress the evidence but that Rankin told him that the Government did not have any evidence. (Id. at p. 11.)  Petitioner testified that if Rankin had explained to him his right to challenge the statements, he would have wanted Rankin to file a motion to suppress.  (Id.)

Petitioner admitted that he had an extensive criminal history with approximately 15 prior arrests and had become familiar with his legal rights.  He admitted he had been read his Miranda rights on other occasions and knew the importance of telling his attorney everything.  (Id. at p. 20-21.)

With regard to the § 851 enhancement, Petitioner reluctantly admitted that, completely contrary to his allegation in his § 2255 motion, Rankin in fact told him about the likelihood of the Government filing such an enhancement mandating a life sentence. (Id. at p. 31.32.)  He acknowledged that Government told him at the bond hearing that he would face mandatory life.  (Id. at p. 40.) Petitioner admitted attorney Rankin told him it was likely he would be found guilty if he proceeded to trial.  (Id. at p. 13, 36.) Petitioner testified, however, that he hoped and believed he would be acquitted.  (Id. at p. 35.)

Petitioner testified that Rankin told him he could render substantial assistance by debriefing and plead out to 20 years. Petitioner admitted he was not willing to cooperate.  (Id. at p. 35-36.)  Petitioner asserted that he was not aware he could have pled guilty and received a sentence of less than 20 years

without rendering substantial assistance.  He testified that if he knew he could get a 10 year sentence, he would have pled guilty for his family's sake.  (Id. at p. 34.)  Petitioner, however, admitted that the Government never offered him a ten-year deal let alone a plea for less than 20 years.  (Id. at p. 24-25.)

Petitioner testified he eventually told Rankin to set up a proffer, but then changed his mind and wanted to proceed to trial. He acknowledged that Rankin told him the Government wanted to conduct a reverse proffer.  (Id. at p. 40-41.)  However, before the meeting, Petitioner told Rankin he did not want to talk to the prosecutor.  (Id. at p. 41.)

With regard to the shackles issue, Petitioner testified that when he was first brought in to the courtroom for jury selection, he was in shackled in leg braces.  (Id. at p. 5.)  He explained that he was seated at counsel's table with attorney Rankin and remained shackled when the jury venire entered the courtroom.  (Id. at p. 16.)  Some of the prospective jurors were seated in the jury box while others were seated in the gallery behind counsel tables. (Id. at p. 18.)  Petitioner agreed that there were drapes on the front of counsel tables but believed that it was possible for the prospective jurors behind him to see the shackles.  (Id. at p. 17.) He explained that his wife, who was sitting in the gallery, gestured to him with her hands to as if questioning why he was wearing shackles.  (Id. at p. 6.)

Petitioner admitted that he never stood up in front of the

jurors and walked out of the courtroom which would have allowed the jurors to see and hear the shackles. (Id. at p. 17.) When asked if any jurors actually saw his shackles, Petitioner stated that "I'm just saying that the ones in back could have seen me with the shackles on." (Id. at p. 18, l. 15-16.) Petitioner conceded that no one said anything to indicate that any of the jury venire saw the shackles. (Id. at p. 18.)

Petitioner testified that he did not speak to Rankin about his concern about being shackled during jury selection. He testified, however, that a few nights later he spoke to his wife and she told him she had spoken to attorney Rankin about the shackles. (Id. at p. 7, 19.) Petitioner recalled that after jury selection and outside the presence of the jury, attorney Rankin asked for the shackles to be removed, and the Court instructed the Marshals to remove them. (Id. at p. 8, 18, 19.)

Attorney Mark Rankin has been a criminal defense attorney since 2003 and has represented hundreds of criminal defendants. He served as an Assistant Federal Public Defender from 2003 until 2006. Thereafter, his practice has been approximately 80% federal cases. (Id. at p. 43-44.)

Rankin explained that he first met Petitioner in jail in early January 2012 and met with him more than six times before trial. (Id. at p. 45, 47.) He described Petitioner as "active" in his defense, and explained that Petitioner brought up legal cases. (Id. at p. 45.) He did not recall mailing the discovery to

Petitioner but said he more than likely handed him a copy when he met with Petitioner at the jail.  (Id. at p. 47.)  He recalled reviewing the discovery with Petitioner.

Rankin specifically recalled reviewing Petitioner's post-Miranda statement that he gave to Agent Gordon and the events surrounding the statement.  Rankin explained that the post-arrest statements were part of the discussion about whether or not Petitioner could testify at trial.  Rankin explained to Petitioner that the statements would come in against him at trial and would potentially be inconsistent with any testimony Petitioner gave at trial.  (Id. at p. 47-48.)

Rankin recalled discussing with Petitioner whether there was an ability to move to suppress his post-Miranda statements.  (Id. at p. 48.)  Rankin testified that Petitioner never told him he told the agents he did not want to give a statement or that he repeatedly asked for an attorney.  (Id. at 48-49.)  Furthermore, nothing in Rankin's case file indicated that Petitioner told him he invoked his right to counsel.  Rankin explained that if Petitioner had told him that, he would have filed a motion to suppress.  Id. at p. 49, 62.)  Rankin recalled that he cross-examined Agent Gordon during trial and that at no time when the Agent was testifying did Petitioner tell Rankin that he was being untruthful or tell him to ask different questions.  (Id. at p. 48-49.)

Rankin recalled that either before Petitioner hired him or when he first got the case, which, at the time, charged Petitioner

in a complaint, he called AUSA Muldrow who informed Rankin that Petitioner was enhanceable under § 851 to mandatory life. (Id. at p. 50.) Rankin researched Petitioner's criminal history and confirmed Petitioner had the prior convictions necessary for the enhancement. Rankin explained to Petitioner that if he went to trial and was found guilty, the judge would have no discretion but to sentence him to mandatory life without parole. (Id.) Petitioner seemed to understand that it was an all or nothing situation, that if he went to trial and lost, he got life without parole, but that if he won, he would go home. (Id. at p. 53.)

At that point in the case, the informal plea discussions were that the Government was willing to file an enhancement for a 20-year mandatory minimum sentence and allow Petitioner to plead guilty and provide substantial assistance. According to Rankin's notes, on January 26, 2012, he explained to Petitioner the processes for trial as well as entering a guilty plea and cooperating. Rankin expressed to Petitioner that he faced a very uphill battle at trial, but that a guilty plea would result in a sentence 20 years, possibly less with a substantial assistance motion. Rankin told Petitioner that they might have an argument to get his sentence down to 10 years.

At the conclusion of the January 26 meeting, Petitioner asked Rankin to set up a meeting with the AUSA and law enforcement, and Rankin did so. (Id. at p. 52.) On February 1, 2012, Rankin met with Petitioner with the intention of reviewing a proffer letter.

Petitioner, however, changed his mind and told Rankin he did not want to meet with law enforcement but rather wanted to proceed to trial. (Id.)

Rankin informed AUSA Muldrow that Petitioner had changed his mind. Muldrow offered to meet with Petitioner to do a reverse proffer during which he would explain to Petitioner what the evidence would be at trial and how Petitioner might be able to help himself. Rankin explained the reverse proffer process to Petitioner, but Petitioner said he did not want to meet with anyone period. Rankin nonetheless encouraged Petitioner to consider the offer. (Id. at p. 53-54.)

Rankin explained that at some point in February 2012, Petitioner said to him "I don't ever want to hear anything about pleading or plea agreements again. We're going to trial. I don't even want to talk about anything else." (Id. at p. 55.) At that point, he stopped encouraging Petitioner to take a plea. Rankin's recollection was that cooperation was not the principle factor that drove Petitioner's decision. Rather, Petitioner thought he was going to win at trial. (Id. at p. 70.)

Rankin said there was never a formal plea agreement offer because Petitioner never gave a proffer. (Id. at p. 72.) Furthermore, there was never an offer for Petitioner to plead straight up and not be enhanced. (Id. at p. 54.) In Rankin's opinion, it was not possible to circumvent the 851 enhancement process by secretly pleading guilty without the Government's

11

knowledge.   Rankin had never heard of such a thing happening.
(Id.)

Rankin had no recollection of Petitioner wearing shackles in
the courtroom.   (Id. at p. 46.)   He did not recall noticing that
Petitioner had shackles on while sitting at counsel table during
jury selection. He did not remember discussing the matter of
shackles with Petitioner's wife.  Nor did Rankin recall raising the
matter with the Court.   (Id.)

Rankin agreed that it was common practice for the deputy
marshals to bring a defendant who is detained into the courtroom in
shackles.  He, however, explained that the deputy marshals always
take the shackles off once the defendant is seated.   (Id. at p.
56.)

### THE COURT'S CREDIBILITY FINDINGS

After hearing the testimony of Petitioner and attorney Rankin,
observing their demeanor, and taking into account the witnesses'
interests in the outcome of these proceedings, the Court finds
Petitioner's testimony, to the extent it contradicts Rankin's
testimony, is not credible and fully credits the testimony of
attorney Rankin.

First, some of Petitioner's testimony differs drastically from
his claims in his § 2255 motion.   For instance, in his motion,
Petitioner asserted that "Collins' trial counsel never discussed
with Collins, to his recollection, filing a motion to suppress on
this or any other basis."   (Cv-D-4, p. 20.)   At the evidentiary

12

hearing, Petitioner testified inconsistently as to whether he and Rankin ever discussed Petitioner's post-arrest statements or a motion to suppress.   Petitioner testified that Rankin never even discussed the post-arrest statements with him.   Yet he also testified that he told Rankin that he had requested an attorney. Furthermore, Petitioner claimed he did not know he had a right to move to suppress his statements.   Yet he testified that he specifically asked Rankin about filing a motion to suppress.   (Cv-D-26, p. 11.)

Second, Petitioner's actions at trial do not support his contention that he told law enforcement that he wanted to remain silent and repeatedly asked for an attorney.   Notably, when Agent Gordon testified at trial regarding Petitioner's post-arrest statements, at no point did Petitioner object to the testimony or suggest that Rankin Agent question Gordon about Petitioner's alleged invocation of his right to silence and his request for counsel.

With regard to Petitioner's testimony related to the § 851 enhancement, Petitioner's testimony at the hearing wholly contradicted his claim in his § 2255 motion.   In his motion, Petitioner states that his counsel did not "warn Collins prior to the Government's filing of the § 851 information that he faced a risk of mandatory life sentence."   (Id. at p. 21-22.)   At the evidentiary hearing, he conceded that not only had Rankin in fact discussed the possibility of an enhancement that would result in a

mandatory life sentence, AUSA Muldrow, in Petitioner's presence, discussed a possible enhancement at the bond hearing.  Ultimately, Petitioner testified that he was aware of the probability of a life sentence enhancement, but he did not want to plead to 20 years and cooperate.  (Id. at p. 12-13, 25, 36, 38.)

Finally, nothing in the trial transcript supports Petitioner's testimony that he was shackled during jury selection.  The transcript does not include any conversation between the Court and the parties regarding shackles.  Nor is there any transcription of a directive by the Court for the deputy marshals to remove the shackles.

On the other hand, attorney Rankin appeared completely credible at the hearing.  Rankin is an experienced attorney who has been practicing law for approximately 12 years.  Three of those years Rankin practiced as an Assistant Federal Public Defender. There is simply no reason that Rankin would not have filed a motion to suppress if he believed that Petitioner's rights had been violated.

Furthermore, there is no credible evidence demonstrating that Rankin failed to discuss the § 851 enhancement.  In fact, Petitioner conceded that he was well aware of the risk of a life sentence.  Additionally, Rankin's testimony relating to the § 851 issue is supported by his contemporaneous notes.  For instance, Rankin's January 26, 2012 notes indicate "discussed trial vs. plea/coop.  Trial = mand. life with likely conviction.  Plea = 20

years -5k levels- probably ~ 10 yrs is possible.  -Δ wants to set up proffer." (GX 1, p. 3.)  The notes dated February 1, 2012, indicated that "Δ changed mind re: proffer, cooperation - wants to go to trial." (Id. at p. 4.)  Similarly, notes dated February 16, 2012, reiterate that Petitioner wanted to proceed to trial and did not want to do another waiver for speedy trial.  (Id. at p. 5.)

As for Rankin's failure to recall any incident relating to shackles, that the incident did not occur is supported by the lack of any transcription of it in the record.

Having assessed the credibility of the witnesses, the Court now turns to the applicable standard of law for claims of ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom.  Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690.  Notably, there is a strong presumption that counsel rendered adequate assistance and

made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's

performance. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995)
(citing <u>Strickland</u>, 466 U.S. at 697).

With regard to the second prong, the petitioner must show
there is "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." <u>Strickland</u>, at 694-95. A reasonable probability is a
probability "sufficient to undermine confidence in the outcome."
<u>Id.</u> at 694. A petitioner must show a "substantial, not just
conceivable, likelihood of a different result." <u>Cullen v.</u>
<u>Pinholster</u>, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (per curiam)
(citation omitted).

With the foregoing standard in mind, the Court addresses each
of Petitioner's ineffective assistance claims.

## I.   SHACKLES

Petitioner's claim that Rankin rendered ineffective assistance
of counsel in failing to move to strike the jury panel or move for
a mistrial when Petitioner was shackled during jury selection is
without merit. <u>Deck v. Missouri</u>, 544 U.S. 622 (2005), prohibits
the use of physical restraints visible to the jury absent the trial
judge's determination that they are justified due to security
concerns. To succeed on a claim of ineffective assistance of
counsel for failing to object to physical restraints during trial,
the petitioner must show a reasonable probability the outcome would
have been different had his counsel objected. <u>Carden v. United</u>
<u>States</u>, 464 Fed. Appx. 839 (11th Cir.) (per curiam), <u>cert. denied,</u>

133 S.Ct. 457 (2012).

There is no credible evidence that Petitioner was shackled at any time during trial, including jury selection. Nor is there any evidence that any of the jurors actually saw the shackles. Notably, Petitioner's wife did not testify at the hearing. Neither the AUSA nor attorney Rankin have any recollection of the incident. Moreover, the incident is not reflected in the trial transcript. Specifically, there is no indication in the entire trial transcript that there was any discussion between the Court and attorney Rankin or the deputy marshals regarding the use of restraints. The trial transcript does not include any directive by Court to the deputy marshals to remove the restraints.

Moreover, the Court has reviewed its trial notes and similarly finds no mention of shackles. Additionally, it is the Court's general practice that the defendant not be shackled in the courtroom absent a valid security concern.

Even assuming Petitioner was shackled for a time during jury selection, Petitioner has the burden of establishing a reasonable probability that but for his counsel's failure to object to the shackling, the result of his trial would have been different. See Marquard v. Sec'y Dept. of Corr., 429 F.3d 1278, 1313 (11th Cir. 2005)(holding that due process claim based on shackling in front of the jury was meritless, because there was no evidence in the record the defendant had been shackled in front of the jury). Petitioner fails to meet this burden. Petitioner abandoned his initial claim

raised in his motion that he was brought into the courtroom after the jury venire had been seated. In any event, such a claim is completely contrary to the Court's custom for the over 35 years that any defendant in custody be brought into the courtroom by the deputy marshals and seated at the defense table prior to the jury venire and/or jury escorted in to the courtroom and that the defendant not be escorted out of the courtroom until the jury is removed. Had the deputy marshals brought Petitioner (shackled or otherwise) into the courtroom in the presence or the jury venire or the jury, a member of the Court's staff or the courtroom security officer would have so advised and the Court would have addressed the matter on the record.

Furthermore, all counsel tables in the courtrooms have drapes over the front and the sides which would prevent the jury venire and jurors from viewing the restraints while Petitioner is at counsel table. While some prospective jurors are seated in the gallery during jury selection, those persons are not seated behind the defense side of the courtroom. Rather, they are seated in the gallery behind the Government's counsel tables. There is no evidence that this seating arrangement allows any prospective juror to see shackles around the ankles of a defendant seated at defense counsel table. Finally, Petitioner failed to present any evidence that any juror actually saw him shackled. He merely speculates a prospective juror could have seen the shackles. He therefore fails to show a reasonable probability that the outcome of the

proceedings would have been different.   Thus, Petitioner is not entitled to relief as to this claim.

## II.  Rule 404(b) Evidence

Petitioner next claims attorney Rankin rendered ineffective assistance in failing to file a pretrial motion in limine to exclude evidence related to a September 10, 2010 robbery and shooting at Petitioner's apartment and the subsequent seizure of cocaine, crack and drug paraphernalia.  Petitioner contends the evidence "did not relate to the charged conspiracy in count one or to the attempted possession in count two" (Cv-D-4, p. 15), was inadmissible under Rule 404(b), and that the Government failed to give notice under Rule 404(b) if the evidence were otherwise admissible.

The Government responds that the evidence directly related to the charged drug trafficking conspiracy and that there was no good faith basis to move to exclude the evidence based upon Rule 404(b). The Government points out that attorney Rankin orally moved to limit the introduction of certain evidence as irrelevant and unduly prejudicial.  The Government concludes that the Court's decision to admit testimony regarding the September 2010 incident was proper, and, as such, there was no prejudice to Petitioner.

Rankin states in his affidavit that he "did not believe [he] had a good faith basis to move to exclude the drug-related evidence from September 11, 2010 because the Government was not using it as Rule 404(b) evidence, but rather presenting it as evidence that

Petitioner was involved in an ongoing drug conspiracy that involved the charged offense, buying multiple kilos of powder cocaine from which he would cook crack cocaine." (Cv-D-12-1, p. 2, ¶ 5.)

The record shows that on the morning of trial, the Government filed a trial brief disclosing its intent to present evidence relating to Petitioner's drug trafficking at an apartment located in Oakwood Village in Palmetto in 2010 and including a drug-related shooting on September 11, 2010. (Cr-D-45.) At trial, attorney Rankin orally objected to evidence of firearms from that date, photographs of the bloody scene, and any evidence related to a small quantity of marijuana that was found at the scene. (Cr-D-104, p. 83, 91-94) The Government argued that the evidence was relevant because the drug conspiracy charged in the Indictment began in 2008 and the CI, who was then a part of the conspiracy, delivered cocaine to Petitioner at the apartment where the shooting occurred. When questioned by the Court whether the Government was using the evidence as Rule 404(b) material, the Government replied:

> Absolutely not, Judge, this is the heart of the Government's conspiracy, that the witnesses say its his apartment where he's cooking crack cocaine and he's selling cocaine. There is no difference. The fact that police came upon this scene because he was shot in a robbery doesn't somehow make it not part of the conspiracy, doesn't somehow make it unfair prejudice. If they had gone in on a search warrant, found the same narcotics, why would there be any objection whatsoever? And, I submit, I wouldn't be objecting, the fact is that this is evidence that is right in the heart of the conspiracy, it's an apartment that the informant and others would go to deliver cocaine to the Defendant which he would sell.

(Id. at p. 98)   AUSA Muldrow argued that the marijuana was

inextricably intertwined because there was powder cocaine on top of the box of marijuana. (Id.)

The Court found that the cocaine activity at the apartment was part of the conspiracy, but expressed concern about the relevance of the blood evidence and shooting. (Id. at p. 103, 105) The Court ruled that the photos of firearms had no place in the case. (Id. at p. 106.) Attorney Rankin stated that he and AUSA Muldrow could work together to narrow down the remaining evidentiary issues. (Id. at p. 105.) The Court instructed the attorneys to confer and reconvene the following morning. (Id. at p. 107)

The following day, the Government filed a notice regarding contested trial exhibits in which it agreed not to present certain evidence and defense counsel did not object to the introduction of certain exhibits. (Cr-D-47.) The parties were not able to reach an agreement as to Government Exhibit 32e (depicting cocaine in baggies on top of packaged marijuana). Attorney Rankin orally objected to the admission of the photograph. (Cr-D-105, p. 2.) The Court limited testimony as to what the cocaine was found on (marijuana) but overruled Rankin's objection to admission of a photo. (Id. at p. 6.)

Petitioner fails to show that Rankin performed deficiently or any resulting prejudice. Federal Rule of Evidence 404(b) deals with the admission of specific instances of prior misconduct to show, among other things, modus operandi, absence of mistake, or intent. Here, attorney Rankin had no legitimate basis to object

22

under Rule 404(b).  The evidence related to the September 11, 2010
incident occurred during the course of the charged conspiracy.  It
was further evidence of the conspiracy, not evidence of unrelated
instances of prior misconduct or "bad acts."  As no evidence was
admitted pursuant to Rule 404(b), there was no basis for Rankin to
file such a motion.  Chandler v. Moore, 240 F.3d 907, 917-18 (11th
Cir. 2001) (counsel is not rendered ineffective by failing to make
baseless motions).  Nor has Petitioner established a reasonable
probability that such a motion would have been successful.

## III. Motion to Suppress Statement

Petitioner next claims that Rankin was ineffective in failing
to file a motion to suppress to challenge the admissibility of
statements Petitioner was alleged to have made after his January 6,
2012 arrest.  The Court has found Petitioner's testimony that he
invoked his right to counsel and that he communicated to Rankin
that he requested an attorney during Agent Gordon's questioning not
to be credible.

Given the Court's credibility findings with regard to this
issue, Petitioner fails to establish either prong of the Strickland
test.  First, Rankin's representation with regard to this matter
did not fall below an objective standard of reasonableness.  Simply
put, there was no legitimate basis to pursue a motion to suppress
Petitioner's post-Miranda statements.  Zakrzewski v. McDonough, 455
F.3d 1254, 1260-61 (11th Cir. 2006) (counsel's failure to file a
motion to suppress was reasonable where he believed the motion

would have been futile).

Chandler, 240 F.3d at 917-18. Furthermore, Petitioner failed to produce any evidence showing a reasonable probability that such a motion would have been successful.

## IV. Plea Discussions

Petitioner has essentially withdrawn his claim that Rankin did not warn him about the potential of an enhancement pursuant to 21 U.S.C. § 851 that would increase his mandatory minimum sentence to life. Petitioner, however, claims that had he known he could have pled guilty without being subject to mandatory life or a mandatory 20 year sentence, he would have accepted his counsel's advice to plead guilty. Petitioner argues that had he pled guilty prior to any § 851 enhancement being filed by the Government, he would have been subject to only a ten year mandatory minimum sentence.

The Government argues that Petitioner's argument is erroneous in that it is based upon the assumption that Petitioner could have pled guilty without a plea agreement before the Government filed a § 851 enhancement. The Government continues that Petitioner simply could not have avoided a sentencing enhancement and cannot show prejudice.

The credible evidence of record establishes that Rankin told Petitioner that if he were convicted at trial, he would receive a mandatory life sentence. (Cv-D-26, p. 11-12, 32, 40.) Petitioner was also aware that the Government had offered to amend the § 851 notice to include only one conviction thereby subjecting Petitioner

to a 20-year sentence if he pleaded guilty and provided substantial assistance.  Petitioner knew he could be sentenced to less than 20 years if the Government filed a substantial assistance motion. Petitioner rejected the informal offer and was unwavering in his desire for a trial.  (Id. at p. 38, 51, 53-55.)

While Petitioner now states that he would have pled guilty to a 10 year sentence, the Government never made such an offer.  His conjecture and speculation that he could have entered a straight up plea prior to the Government filing an § 851 enhancement is totally without any basis.  In this regard, there is simply no evidence that such a procedure would have been possible. Certainly, the Government was not amenable to Petitioner pleading guilty without any § 851 enhancement.  As attorney Rankin explained, "I never heard of that happening and wouldn't see it as a possibility."  (Cv-D-26, p. 54.)

When the Court sets a guilty plea, both parties are given notice.  As the Government states is its normal practice, once it receives notice of a guilty plea, the Government files any intended § 851 notice.  In this case, had Petitioner attempted to enter a straight up guilty plea, the Government would have received notice of the plea and would have filed its § 851 notice prior to the plea hearing.  An 851 notice alleging just one prior drug conviction would have subjected Petitioner to a mandatory minimum sentence of 20 years.  21 U.S.C. § 841(b)(1)(A)(ii).  Petitioner was unwilling to plead to a 20-year sentence.  Under the circumstances,

25

Petitioner has not shown deficient performance.   See Scott v. United States,   325 Fed. Appx. 822, 824-25 (11th Cir. 2009) (per curiam) (petitioner failed to meet first prong of Strickland test where he   presented no evidence supporting his claim that a non-negotiated plea would have prevented the government from filing an § 851 information).   Nor has Petitioner established prejudice with regard to this matter.   See Johnson v. Alabama,256 F.3d 1156, 1183 (11th Cir.2001) ("pure speculation" is insufficient to demonstrate ineffective assistance of counsel).

## V.   Prior Convictions - Alleyene

Petitioner's final claim of ineffective assistance of counsel is based upon Rankin's failure to object at sentencing to the use of prior convictions to enhance his sentence to mandatory life imprisonment when the convictions were not charged in the Indictment and proved to a jury beyond a reasonable doubt.   He also argues his counsel should have raised the issue on appeal. Petitioner additionally raises a separate substantive claim that his sentence is unconstitutional.   Petitioner relies on Alleyne v. United States, 133 S.Ct. 2151 (2013).

In Alleyne, the Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."   Id. at 2155.   Notably, Alleyne did not overrule Almendarez-Torres v. United States, 523 U.S. 224 (1998).   See Alleyne, 133 S.Ct. at 2160 n.1 (noting that in Almendarez-Torres, "we recognized a narrow

exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today.")

In Almendarez-Torres, the Supreme Court held that, for sentencing enhancement purposes, a defendant's prior conviction does not have to be alleged in the indictment or submitted to a jury and proven beyond a reasonable doubt. 523 U.S. at 226-27, 239-40. While Petitioner argues that "it is only a matter of time before the Court recognizes that even prior convictions require proof beyond a reasonable doubt to a unanimous jury, and require charge by indictment" (Cv-D-4, p. 23), the Eleventh Circuit has repeatedly held that it is bound to follow Almendarez-Torres until the Supreme Court overrules the decision. United States v. Johnson, No. 14-10390, 2015 WL 7740578 (11th Cir. Dec. 2, 2015) (per curiam) ("Because Almendarez-Torres remains good law, we reject Johnson's argument that a jury must find that he had the three predicate felonies."); United States v. Smith, 775 F.3d 1262, 1266 (11th Cir. 2014) (finding the district court correctly used Smith's prior convictions to designate him an armed career criminal), cert. denied, 135 S.Ct. 2827 (2015); United States v. Mathis, 767 F.3d 1264, 1285 (11th Cir. 2014) (the court found Mathis' claim that the district court's imposition of a statutory sentencing enhancement violated the Sixth Amendment was foreclosed by Circuit precedent), cert. denied, 135 S.Ct. 1448 (2015); United States v. Harris, 741 F.3d 1245, 1250 (11th Cir. 2014) (while

recognizing some tension between <u>Almendarez-Torres</u> and <u>Alleyne</u>, "we are not free to do what the Supreme Court declined to do in <u>Alleyne</u>, which is overrule <u>Almendarez- Torres</u>.")   In light of the controlling law of the Supreme Court and the Eleventh Circuit, the Court's use of Petitioner's prior convictions to enhance Petitioner' sentence did not violate the Fifth or Sixth Amendments.

Neither Rankin nor appellate counsel's failure to raise the issue at sentencing or on appeal constitutes ineffective assistance.   <u>Alleyne</u> had not been decided at the time of Petitioner's sentencing nor by the conclusion of Petitioner's appeal.   Under the controlling law at the time, as well as the current law, as set forth above, enhancement of a sentence due to prior convictions does not need to be charged in an indictment or proved to a jury.   Petitioner's counsel was not ineffective for failing to pursue a meritless claim.   Nor has Petitioner demonstrated any resulting prejudice.

## VI.   Petitioner's Pro Se Motion To Amend

Petitioner, despite being represented by retained counsel, filed a motion to amend his § 2255 motion on December 7, 2015. Petitioner argues that he was erroneously sentenced as a career offender.   He argues that his conviction for evading arrest does not constitute a predicate offense for purposes of U.S.S.G. § 4B1.1. Petitioner relies on <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), wherein the Supreme Court found the residual clause of the ACCA is unconstitutional.

Petitioner fails to recognize that the Court at sentencing sustained his objection to the career offender enhancement. (Cr-D-110, p. 77.)  As Petitioner was not deemed to be a career offender, his criminal history category was changed from VI to II.  (Id. at p. 85.)  His guideline sentence was reduced to 262 to 327 months. (Id. at p. 86).  This change, however, did not affect his statutory sentence of mandatory life.  As Petitioner was not sentenced as a career offender, he is not entitled to relief as to this claim.

It is therefore ORDERED that:

(1)  Petitioner's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1) is DENIED.

(2)  Petitioner's Motion for Leave to Amend Petitioner's Motion to Vacate Conviction Per 28 U.S.C. § 255 Pursuant to Fed.R.Civ.P. Rule 15 Supplemental Amendment is DENIED.

(3)  The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case file.

### CERTIFICATE OF APPEALABILITY

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue … only if the applicant has made

29

a substantial showing of the denial of a constitutional right."
Id. at § 2253(c)(2).  To make such a showing, a petitioner "must
demonstrate that reasonable jurists would find the district court's
assessment of the constitutional claims debatable or wrong,"
Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack
v.McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented
were 'adequate to deserve encouragement to proceed further,'"
Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting
Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner
has not made the requisite showing in these circumstances.

DONE AND ORDERED at Tampa, Florida this 17th day of December,
2015.

WILLIAM J. CASTAGNA
SENIOR  UNITED  STATES  DISTRICT  JUDGE